# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DONALD HENSLEY, JR. (#112218)**                    **CIVIL ACTION**

**VERSUS**

                                                                          **20-703-SDD-RLB**

**GABRIEL HEBERT, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 18, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DONALD HENSLEY, JR. (#112218)                    CIVIL ACTION

VERSUS

                                                 20-703-SDD-RLB

GABRIEL HEBERT, ET AL.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are the cross Motions for Summary Judgment filed on behalf of plaintiff

(R. Docs. 43 and 49) and defendants (R. Doc. 48). The Motions are opposed. *See* R. Docs. 46.

50, and 52.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"),

Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against defendants Barton

and Gabriel alleging that his constitutional rights have been violated due to unconstitutional

conditions of confinement. He prays for injunctive and monetary relief.

Plaintiff moves for summary judgment relying upon the pleadings, a Statement of

Material Facts, copies of his administrative remedy proceeding ("LSP-2020-1422"), his

Complaint, the Affidavits of Johnny Harris, Robert Gray, and Lawrence Jacobs, excerpts of his

medical records dated March 19, 2020 through September 3, 2020, and photos of a tier hallway

and a cell. Defendant moves for summary judgment relying upon the pleadings; a Statement of

Uncontested Material Facts; a certified copy of the plaintiff's medical records dated from

January of 2021 through October 8, 2021, pictures of a tier and a cell, Answers to

Interrogatories, and a certified copy of Cellblock D Logbook.

Pursuant to well-established legal principles, summary judgment is appropriate where

there is no genuine disputed issue as to any material fact, and the moving party is entitled to

judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*,

477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for

summary judgment must inform the Court of the basis for the motion and identify those portions

of the pleadings, depositions, answers to interrogatories and admissions on file, together with

affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v.*

*Catrett, supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the

opposing party must direct the Court's attention to specific evidence in the record which

demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict

in its favor. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. This burden is not satisfied

by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated

assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air*

*Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be

entered against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at

trial. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323.

Summary judgment is appropriate in any case where the evidence is so weak or tenuous

on essential facts that the evidence could not support a judgment in favor of the non-moving

party. *Little v. Liquid Air Corp., supra*, 37 F.3d at 1075. In resolving a motion for summary

judgment, the Court must review the facts and inferences in the light most favorable to the non-

moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or

resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th

Cir. 1991).

In his Complaint the plaintiff alleges the following: On March 9, 2020, the plaintiff was

transferred to "the dungeon" and was housed in CBD Upper Right cell #4. He immediately

noticed that there was no light in the cell. The plaintiff and his cell mate spoke to defendant

Hebert about the lack of lighting, and defendant Hebert stated that he would check on the problem. The plaintiff and his cell mate also spoke to defendant Barton who told them it would not be long before a light was placed in the cell. Despite seeing defendants Hebert and Barton several more times, the defendants would not discuss the lighting status any further.

The plaintiff's cell is semi-dark during the day, and at night the cell is dark with "a little light" from hallway lights. Plaintiff's top bunk, however, was mostly obscured from the hallway lighting. At the time his Complaint was filed, the plaintiff had been without a light in his cell for four months resulting in migraines, dizziness, and blurred vision. Due to the position of the plaintiff's bunk, he receives less that 7-15 foot-candles of lighting.

The plaintiff was moved to a new cell (CBC Upper Right cell #4) on August 14, 2020 but his new cell was also without a light. The entire tier was missing lighting in the cells. A few days later the plaintiff spoke to defendant Hebert and informed him of his blurred vision and migraines. Defendant Hebert said that it was up to defendant Barton to have the lighting fixed. Defendant Barton refused to move the plaintiff to a cell with lighting.

Defendants first assert that some of Plaintiff's claims are subject to dismissal because Plaintiff has failed to exhaust available administrative remedies relative thereto as mandated by 42 U.S.C. § 1997e. Pursuant to this statute, Plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.

This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including

compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson, supra*, 385 F.3d at 516, *quoting Porter v. Nussle, supra*, 534 U.S. at 525. Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose. *Id*.

In this regard, the Louisiana Department of Public Safety and Corrections has implemented a two-step administrative process that involves the submission of an initial grievance to the warden's office at the inmate's facility. *See* 22 La. ADC, Part I, § 325. A review of the record reveals that on June 2, 2020, Plaintiff filed a Request for Administrative Remedy Procedure ("LSP-2020-1422") regarding the claim presented herein (an unconstitutional condition of confinement due to lack of adequate lighting in his cell). The plaintiff's grievance was denied at the First Step on July 15, 2020 because "the issue is being addressed." The plaintiff proceeded to the Second Step on July 28, 2020. The plaintiff's grievance was denied at the Second Step and the plaintiff received notice of the same on October 15, 2020.

On October 16, 2020, Plaintiff filed his Complaint. Defendants assert that the plaintiff's claims occurring after June 2, 2020 are not exhausted and should be dismissed because the plaintiff failed to file any subsequent grievances for any action or inaction occurring after June 2, 2020. In his Supplemental Motion for Summary Judgment (R. Doc. 49), Plaintiff asserts that his grievance pertained to an ongoing constitutional violation; therefore, his June 2, 2020 grievance exhausted all claims presented herein from March of 2020 through August 31, 2020.

In *Johnson v. Johnson,* 385 F.3d 503, 521 (5th Cir. 2004), the Fifth Circuit stated that "prisoners need not continue to file grievances about the same issue." Similarly, in *Moussazadeh*

*v. Tex. Dep't of Criminal Justice,* 703 F.3d 781, 788 (5th Cir. 2012), the Fifth Circuit stated,

"Where the prisoner's complaint addresses an ongoing problem or multiple instances of the same

type of harm, prisoners need not file a new grievance in each instance to qualify for exhaustion."

In the instant matter, the plaintiff complains of multiple instances of the same type of harm from

inadequate cell lighting in his first cell from March of 2020 to August 13, 2020, and in his

second cell from August 14, 2020 to August 31, 2020. As such, the plaintiff was not required to

file a new grievance in each instance to exhaust his administrative remedies. In fact, the

administrative code provides that duplicate requests will be rejected. *See* 22 La. ADC, Part I, §

325(I)(c)(i)(c). Accordingly, the defendants' Motion should be denied in this regard.

Turning to the parties remaining arguments, in response to the plaintiff's allegations,

defendants challenge the accuracy of the allegations alleged by the plaintiff and assert that they

are entitled to qualified immunity in connection with the plaintiff's claims. Plaintiff asserts that

the defendants are not entitled to qualified immunity. The qualified immunity defense is a

familiar one and, employing a two-step process, operates to protect public officials who are

performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated

in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether,

taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct

violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether

the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is

undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The

relevant, dispositive inquiry in determining whether a constitutional right was clearly established

is whether it would have been clear to a reasonable state official that his conduct was unlawful in

the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that the defendant's Motion should be granted. The right allegedly violated was not clearly established.

The plaintiff's allegations pertain to his conditions of confinement. The prohibition against cruel and unusual punishment mandates that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones"). However, a constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter*, *supra,* 501 U.S. at 304. Second, under a subjective standard, the Court must determine that the prison officials responsible for the deprivation have been "deliberately indifferent to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).

Courts have held that a prison's failure to provide adequate lighting may violate the Eighth Amendment's requirement that adequate shelter be provided. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996); *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985) ("adequate lighting is one of the fundamental attributes of adequate shelter"). In *Powell v. Washington*, 720 F. App'x 222, 228 (6th Cir. 2017) the Court found that "the alleged deprivation of adequate lighting in Powell's cell for thirty-five days is sufficiently extreme to state an Eighth Amendment claim." *See also Cousin v. Delaney*, 14-cv-76-JWD-RLB, 2015 WL 589972, at *5 (M.D. La. Feb. 11, 2015) (holding that claim of inadequate lighting sufficiently set forth a violation of constitutional rights).

The competent summary judgment evidence submitted by the plaintiff shows that on March 9, 2020 the plaintiff was transferred with inmate Johnny Harris to CBD U/R #4 for disciplinary segregation. Harris noticed that there was no light in the cell and spoke to Lt. Goodin and defendant Hebert. On April 12, 2020, Harris again spoke with defendant Hebert regarding the lack of lighting in his and the plaintiff's cell. On April 16, 2020, the plaintiff stopped defendant Barton, who was making rounds, and informed him about the lack of lighting in his cell and resulting eye strain, but defendant Barton did not respond. The plaintiff later informed defendant Barton that he was suffering from dizziness and headaches, and defendant Barton remarked that it probably wouldn't be long before a light was placed in his cell. On April 20, 2020, Harris requested that he and the plaintiff be moved to a different cell, but defendant Hebert did not respond. Harris observed the plaintiff make an emergency sick call on May 1, 2020 due to severe headaches and blurred vision due to eye strain caused by the lack of light in the cell. According to Harris, he was able to make shadows on his cell walls with his hands. *See* R. Doc. 43-1, p. 17-18.

Inmate Robert Gray observed that the plaintiff did not have a light in his cell after the entire tier was transferred on August 14, 2020 to a new area of the prison. Gray also observed the plaintiff's attempt to speak with defendant Barton regarding the absent lighting, and that defendant Barton did not respond. *See* R.Doc. 43-1, p. 19.

Additionally, beginning on March 19, 2020 the plaintiff repeatedly complained of headaches, blurred vision, and dizziness, particularly after reading in his cell, caused by the lack of lighting in his cell. The plaintiff complained of the same through September 3, 2020. *See* R. Doc. 43-1, p. 22-40.

The competent summary judgment evidence submitted by the defendants shows that, defendant Barton does not recall speaking with either inmate Harris or the plaintiff. The plaintiff

did not speak with defendant Barton regarding headaches or blurred vision resulting from not having a light in CBD Upper Right cell #4. The plaintiff did not speak to defendant Barton regarding the lack of lighting in CBD Upper Right cell #4 or CBC Upper Right cell #4. Defendant Barton is unable to say how long the cell lighting was broken due to tampering by offenders but recalls that the lighting in the CBD cell was repaired on June 10, 2020. Defendant Barton did not observe the lighting in the plaintiff's CBC cell. *See* R. Doc. 48-6.

In response to the plaintiff's grievance, defendant Barton stated that the plaintiff filed his grievance on June 2, 2020 and that maintenance began working to replace the lights on June 15, 2020. All old lights were replaced on Cell Block D during the week of June 15 – June 19, 2020. *See* R. Doc. 23-1, p. 7.

With regards to defendant Hebert, the plaintiff notified him that his cell light was broken. New tamper resistant lights were then ordered. The parts were on back-order for a period of time and were installed on June 10, 2020. Defendant Herbert was not involved with the plaintiff's transfer to the CBC. With regards to the cells in the CBD, the lights above the tier walkway adequately illuminate each cell along the walkway. *See* R. Doc. 48-5.

In response to the plaintiff's grievance, defendant Hebert stated that the plaintiff informed him of the lack of lighting in his cell. An inspection was made of all cell lighting in Cell Block D and new fixtures were ordered. The parts were backordered and arrived approximately three weeks prior to the signing of Herbert's ARP statement, which would have been June 10, 2020. The light fixtures were then installed in all of the CBD cells. *See* R. Doc. 23-1. The maintenance log notes that on June 10, 2020 tier lights were put in "1-15" as well as two windows. *See* R. Doc. 48-7.

As such, it appears that there are several material issues of fact remaining. While it appears uncontested that the plaintiff did not have a light in his CBD cell from March 9, 2020

through June 10, 2020, the amount of light provided in the plaintiff's cell by tier lights or other

sources is not clear. The plaintiff was obviously not left in absolute darkness as defendant Hebert

has stated that the tier lighting was "adequate" and inmate Harris stated that he could make

shadows on the walls with his hands. There was at least some source of light, but the Court

cannot determine, on the record before it, whether the lighting was in fact adequate or inadequate

under the Eighth Amendment. The photographs submitted by the parties do confirm the

plaintiff's allegations that any light from the tier lighting is partially obscured by concrete for

inmates assigned to top bunks. The record is also devoid of any evidence that the plaintiff was

allowed outside of his cell for any period of time where lighting may have been available for him

to read and write.[1]

The parties have also provided competing evidence as to when each defendant was

notified that the plaintiff did not have a light in his cell. Inmate Harris states that he and the

plaintiff began notifying the defendants sometime shortly after March 9, 2020 and notified the

defendants several more times on April 12, 2020, April 16, 2020, April 20, 2020, and May 1,

2020. Defendant Barton denies speaking to either the plaintiff or inmate Harris. Defendant

Barton states that he received notice around the time the plaintiff's grievance was filed in June of

2020.

Additionally, the plaintiff's medical records contain numerous complaints of headaches,

blurred vision, and dizziness which the plaintiff related to the lack of lighting in his cell. The

---

[1] Compare with *Hammond v. Briley*, 2004 WL 413293 (N.D. Ill. Jan. 29, 2004) wherein summary judgment was granted on behalf of the defendants where record revealed that the plaintiff was able to read in his cell in the morning due to overhead lighting and natural light, and the plaintiff was allowed to leave his cell for recreation and to meet with visitors; and *Hicks v. Lannoye,* 2021 WL 2454050 (E.D. Wis. June 16, 2021) wherein summary judgment was granted on behalf of the defendants where record revealed that the plaintiff was able to read in his cell minimally and was able to leave his cell to attend religious services, the law library, school, and recreation time. *Compare also Perry v. JPay*, Inc., 2019 WL 1394379 (W.D. Va. March 27, 2019), wherein summary judgment was granted on behalf of the defendants because although one defendant was advised of the plaintiff's medical problems related to the lack of lighting in his cell, the defendant informed the plaintiff that he could purchase a lamp from the canteen for additional lighting.

plaintiff also relayed in his medical complaints that he was particularly bothered when trying to

read or write in his cell. Defendants assert that the plaintiff's medical complaints were not related

to a lack of illumination because after the plaintiff received glasses in October of 2020, he did

not complain of headaches, blurred vision, or dizziness again until February 4, 2021.

On the record before this Court, it appears the foregoing issues would be decided on the

credibility of the witnesses which the Court may not evaluate on summary judgment. Turning to

the second prong of the qualified immunity analysis, courts may grant qualified immunity on the

ground that a purported right was not "clearly established" by prior case law.

As explained by the Court is *Saucier*, "…we emphasized in *Anderson* "that the right the

official is alleged to have violated must have been 'clearly established' in a more particularized,

and hence more relevant, sense: The contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right." 483 U.S. at 640,

107 S.Ct. 3034. The relevant, dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was unlawful in

the situation he confronted. *See Wilson v. Layne,* 526 U.S. 603 ("[A]s we explained in *Anderson,*

the right allegedly violated must be defined at the appropriate level of specificity before a court

can determine if it was clearly established"). *See Saucier,* 533 U.S. at 202.

While it may be clearly established that inmates may not be left in total darkness for

extended periods of time, what amount of light is required in an inmate's cell in order to provide

"adequate lighting" is not clearly established in federal precedent. Case law suggests, but does

not clearly establish, that, to meet constitutional standards, a sufficient amount of light, from any

source, must be provided in order for the inmate to comfortably read and write.

The Fifth Circuit addressed cell lighting in *Gates v. Cook,* 376 F.3d 323 (5th Cir. 2004).

Therein the Court upheld an award of injunctive relief compelling prison officials to upgrade the

lighting in the plaintiffs' cells, on death row, to a level of twenty foot-candles. In doing so, the court noted that the trial court had apparently considered and credited expert testimony that the lighting in the inmates' cells was "grossly inadequate for the purposes of sanitation, personal hygiene, and reading, that this condition also contribute[d] to further mental health deterioration, and that twenty foot-candles was the appropriate minimum level at which these activities could take place." *Id.* at 342. The Court found that the lighting injunction was supported by the conditions supporting Injunctions #1, # 2, and #9.

Injunctions #1 and #2 pertained to the cleanliness of the inmate's cells. In *Gates*, the cells were extremely filthy with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles stuck to the wall. Injunction #9 pertained to the provision of inadequate mental health care. As such, the inmates in *Gates* were subject to various conditions of confinement. As such, it still remains unclear what amount of lighting is required in an inmate's cell to be considered adequate for purposes of the Eighth Amendment. *Gates* did not address this issue.

In the instant matter the plaintiff complains solely of the lack of a light inside of his cell. It is undisputed that there was some light[2] illuminating the plaintiff's cell which emanated from the tier lights in the hallway. The plaintiff alleges that this light was not sufficient for him to be able to comfortably read and write in his top bunk. *See* R. Docs 1, p.5 43, p. 20. The plaintiff does not complain of any other condition of confinement caused or made worse by the alleged insufficient lighting.

On the record before the Court, it cannot be said that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. The plaintiff was not left in

---

[2] In the plaintiff's opinion, he received approximately 7-15 foot-candles due to the position of his bed. He acknowledges that during the day the cell was "semi-dark" and that even at night it received light from the hallway lights. (R. Doc. 43 at 3). This was an adequate amount in the opinion of defendant Hebert.

total darkness for an extended period. It would be clear to a reasonable officer that the failure to

provide any light under such circumstances is unlawful. However, it has not been clearly

established that the lack of a light inside an inmate's cell or that less lighting for a top bunk

violates the inmate's Eighth Amendment rights when the cell is illuminated by outside sources.

The instant matter is not similar to *Gates* where a combination of conditions was sufficiently

serious to deprive the plaintiff of his basic human needs. It would not be clear to defendants that

the failure to provide the plaintiff with a light inside of his cell would be unlawful when the

plaintiff's cell was illuminated, to some extent, by hallway lights. As such, the right allegedly

violated was not clearly established, and the defendants are entitled to qualified immunity.

## RECOMMENDATION

It is recommended that the plaintiff's Motion for Summary Judgment (R. Docs. 43 and

49) be denied. It is further recommended that the defendant's Motion for Summary Judgment (R.

Doc. 48) be granted, and that this matter be dismissed with prejudice. It is further recommended

that the plaintiff's Motion for Appointment of Counsel (R. Doc. 51) be denied as moot.

Signed in Baton Rouge, Louisiana, on January 18, 2022.


_____
 **RICHARD L. BOURGEOIS, JR.**
 **UNITED STATES MAGISTRATE JUDGE**